UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE E. SEWELL,

    Plaintiff,

v.                                      Case No. 1:06-CV-418
                                            Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                                        /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on May 1, 1972 and completed the 9th grade (AR 60).[1] Plaintiff alleges that he has been disabled since June 3, 2003 (AR 60). He had previous employment as a laborer in a plastic factory, hi-lo driver, cook, fast food worker, press tender, hand packer, assembler and maintenance worker (AR 85, 153, 315, 327-29, 335-42). Plaintiff identified his disabling condition as "hard to follow directions, it is difficult to fill out paper work, oral directions take repeatiton [sic]" (AR 84). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on November 22, 2005 (AR 15-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health*

*and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since June 3, 2003, the alleged onset of disability (AR 20). Second, the ALJ found that he suffered from the severe impairment of "organic mental disorder" (AR 20). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform the physical demands at all exertional levels. He is, however, moderately limited in understanding, remembering, and carrying out detailed instructions.

(AR 20).

The ALJ found that plaintiff's impairment did not prevent him from performing his past relevant work (AR 20). Specifically:

> The claimant's past relevant work as a press tender and hand packer (as the claimant performed those jobs and as they are generally performed) and as a fast-food worker (as the claimant performed that job) did not require the performance of work-related activities precluded by his residual functional capacity.

(AR 20).

4

Finally, while the ALJ found that plaintiff's allegations regarding his limitations in reading and writing were credible, the ALJ determined that "[t]he effects of his cognitive deficits . . . are not of a debilitating, disabling degree"(AR 20). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 28).

### III. ANALYSIS

Plaintiff raised two issues on appeal.

> **A.  The ALJ committed reversible error by not properly considering whether plaintiff met Listing 12.05(c).**

First, plaintiff contends that the ALJ should have found him disabled under the listed impairment of mental retardation. The ALJ resolves the issue of listed impairments at the third step of the sequential evaluation, at which time the claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). The "Listing of Impairments" is set forth at 20 C.F.R. § 404, Subpt. P, Appendix 1, and "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525; 416.925. In order to be considered disabled under the listing, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Evans*, 820 F.2d at 164. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present.

5

*See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984).

The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* Consequently, when a claimant successfully demonstrates that he meets a listed impairment, the Commissioner will find the claimant disabled without considering his age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

The applicable listing, 12.05C, provides as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet the requirements set forth in Listing 12.05C, plaintiff must satisfy both the the "diagnostic description" of mental retardation set forth in the initial paragraph of Listing 12.05, and the specific requirements of subparagraph C. *See Foster v. Halter*, 279 F.3d 348, 354 (6th

6

Cir.2001).  *See, e.g., Cooper v. Commissioner of Social Security*, No. 06-5606, 2007 WL 543059 at *1 (6th Cir. Feb. 15, 2007) (claimant failed to meet the diagnostic description of Listing 12.05C, when no psychologist had diagnosed the claimant with mental retardation, and the clinical psychologist who tested claimant diagnosed him as having borderline intellectual functioning).

Here, Wayne B. Kinzie, Ph.D., a consulting psychologist, found that plaintiff had a verbal IQ score of 68, a performance IQ score of 68, and a full scale IQ score of 65 (AR 257). In reaching this conclusion Dr. Kinzie found that:

> Basically, this claimant is an individual with very limited intellectual functioning abilities who has had a good deal of work history. It is unclear as to why the claimant is unemployed at this point. There were no indicated physical impairments. There were no indicated emotional dysfunctions.

Another consulting psychologist, Arthur E. Jongsma, Jr., Ph.D., found that plaintiff had IQ scores of 77, 77 and 75, respectively (AR 222). Similarly, Dr. Jongsma observed that while plaintiff had cognitive concerns, he had no significant emotional or physical problems (AR 215).

Even considering plaintiff's lowest IQ scores as assigned by Dr. Kinzie, which would meet the requirements for mental retardation under Listing 12.05C, nothing in the record supports the other requirements of Listing 12.05C. Plaintiff lacks a diagnosis for mental retardation, evidence demonstrating onset before age 22, and "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

Accordingly, the ALJ properly concluded that plaintiff did not meet the requirements of Listing 12.05C.

### B.  The ALJ failed to fulfill his duties toward an unrepresented plaintiff.

Next, plaintiff contends that the ALJ failed to adequately develop the administrative record. The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel. *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant).

Here, the ALJ was faced with an unrepresented claimant with an organic mental disorder and a combined IQ score as low as 65. The ALJ acknowledged that plaintiff had a limited ability to read write, e.g., while plaintiff could write out a grocery list, he could not read or write a letter (AR 17). While plaintiff has a driver's license, he admits that he failed the written portion of the driver's examination in the past, and that a friend completed the written test for him (AR 317). The ALJ was faced with a person with limited intelligence, a ninth grade education, a history of attendance in special education classes and limited literacy. Under these circumstance, the ALJ had a duty to scrupulously and conscientiously explore all relevant facts.

It appears to the court that the ALJ performed this heightened duty. Plaintiff was examined by two psychologists. Neither psychologist diagnosed plaintiff as suffering from mental retardation, nor did these psychologists observe any emotional or physical deficiencies. Plaintiff did not complain of any specific physical problem, other than a resolved issue involving back pain (AR 323). At the time of the hearing, plaintiff complained of no debilitating physical ailment and denied taking any pain medication (AR 323, 325-27). Plaintiff also testified that he drives a car (albeit that he obtained his driver's license illegally) (AR 317). The ALJ reviewed third-party daily

activities and function reports completed by plaintiff's cousin and a friend (AR 105-14, 128-37, 169-77). These reports indicate that although plaintiff has difficulty understanding and following instructions, he plays video games, watches television, plays basketball, washes his clothes, picks up his children from school, and visits relatives occasionally (AR 18). Plaintiff identified no treating physician other than the emergency room (AR 91). The ALJ contacted Spectrum Health and located an emergency room record from January 2002, for treatment of a rash (AR 228).

Plaintiff contends that the ALJ "did not make the effort" to obtain copies of his school records. Plaintiff's Brief at 8. The administrative transcript indicates that the ALJ requested records from the Grand Rapids Public Schools, seeking psychological reports (including IQ scores), achievement testing, speech and language evaluations, current therapy notes, summaries of IEP, MET and 3-year evaluations, social worker reports, counselor reports and disciplinary records (AR 211). The school district responded that there were no records (AR 211). Neither party to this suit attempts to explain the adequacy of the school district's response or how the response would have changed the ALJ's decision. While plaintiff points out that it is inappropriate for this court to consider the school records as new evidence at this stage of the proceedings, nothing prevents counsel from presenting copies of records to this court in support of a request for a remand.

Finally, even if additional school records reflected that plaintiff had been diagnosed with mental retardation as a student (i.e., before age 22), plaintiff would not meet the requirements of Listing 12.05C, because the administrative transcript contains no evidence of an additional and significant work-related limitation of function. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is

9

reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

## IV.  Recommendation

I find no basis to reverse or remand this matter, and therefore respectfully recommend that the Commissioner's decision be affirmed.

Dated:  May 3, 2007                               /s/ Hugh W. Brenneman, Jr.
                                                         Hugh W. Brenneman, Jr.
                                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).